# CASES DETERMINED

AT THE

## August Term, 1895.

Manitowoc County, Respondent, vs. Truman and others, imp., Appellants.

*September 6 — September 26, 1895.*

*Counties: Deposit of funds: Selection of depositary: Contract for interest: Bonds: Sureties, when discharged.*

1. Sec. 693, S. & B. Ann. Stats. (providing that the county board "*may annually* at their first meeting, or within the month of June, and as often thereafter as they shall determine," select some bank with which "all funds then in the county treasury, or which shall thereafter be received by the treasurer, shall be deposited;" that the bank shall give a bond; that a contract shall be made with it for the payment of interest on the funds deposited; and that the county board may, at any time, direct all sums so deposited to be paid into the treasury or to such other bank or banks as they shall select), does not require a new selection and a new contract to be made and a new bond taken at the expiration of every year.

2. A contract by which the bank selected was to pay to the county interest at the rate of three per cent. on average monthly balances of deposits subject at all times to disbursement by the county treasurer, and at the rate of four per cent. on moneys which should remain on deposit for a year from the date of the deposit thereof, but preserving the right of the county board to withdraw all deposits at any time, was valid under said sec. 693, which directs the county board to contract with the depositary for the payment "of such interest upon the funds deposited as they may mutually agree upon."

3. A bond given by the bank, with sureties, reciting the selection of the bank as a depositary pursuant to sec. 693, and the making of

the above-mentioned contract, and conditioned for payment by the bank accordingly, remained in force, not for any specific period, but during the continuance of the deposits in such bank. *It would seem,* however, that as the contract might be determined by the county board at any time by withdrawal of the deposits, the sureties on the bond were also at liberty to terminate the agreement, so far as they were concerned, at any time, by giving notice.

4. Such a bond is a substantial compliance with the provision of sec. 693 that the bank shall "give security *in the same manner* as is now required of the treasurer of such county," etc., although it omits some things which are contained in the form prescribed in sec. 710 for the bond of the county treasurer, but which are inappropriate to the security to be given by such bank.

5. The adoption by the county board, about a year after the making of the contract, of a committee report to the effect that the bank had agreed to continue the arrangement in regard to interest on monthly balances for the next succeeding year, was not such an extension or renewal of the contract as would discharge the sureties on the bond.

APPEAL from a judgment of the circuit court for Manitowoc county: N. S. GILSON, Circuit Judge. *Affirmed.*

The assessed valuation of the taxable property of the plaintiff county, at the times referred to, exceeded $6,000,000. On May 31, 1890, the county board appointed a special committee to inquire into and report on the subject of depositing surplus money in banks. On November 26, 1890, the said committee reported favorably to such deposit, upon terms mentioned. The county board thereupon adopted resolutions to the effect that T. C. Shove Banking Company (a corporation) be selected as depositary of the county funds, under sec. 693, R. S., as amended, and that all funds then in the treasury of said county, and which should thereafter be received by its treasurer, should, until the further order of said board might otherwise direct, be deposited in said bank and with said company, provided the bank should first give security, to be approved by the county board, and provided, further, that said company, before such deposit, should contract in writing with said board for the payment to the

county of such interest upon the funds which should be so deposited *as might be mutually agreed upon*, but which should not be less than at the rate of three per cent. per annum on each average monthly balance of so much of said funds as might at all times be subject to disbursement by said treasurer, and at a rate of not less than four per cent. per annum on so much, if any, of said funds as might be so deposited under special agreement that the same should not be withdrawn until the expiration of one year from the date of such deposit, "except it be done by order of this [county] board."

On December 30, 1890, said county board, through its committee, entered into a contract in writing with said banking company, reciting said resolution and statute and action of the county board, whereby said banking company, in effect, did promise, stipulate, and agree to and with said county board that said company would pay to said county, on all funds belonging to said county and which should be deposited with said banking company, interest at the rate of three per cent. per annum on each average monthly balance of so much of said funds as might at all times be subject to disbursement by said treasurer, at the end of each and every month during the time such funds remained so on deposit, and that said banking company would pay to said county, on all funds of said county which should be deposited with said banking company, and which should not be withdrawn therefrom until the expiration of one year from the date of such deposit, " *except it be so withdrawn by the order of said* board, interest at the rate of four per cent. per annum, payable one year from the date of such deposit." Thereupon the defendants gave to the plaintiff a bond, of which the following is a copy, to wit:

"Know all men by these presents, that we, the T. C. Shove Banking Company, a corporation duly organized under the laws of the state of Wisconsin, of the city of Manitowoc, in the county of *Manitowoc*, in said state, principal, and *George*

*Cooper, Horatio Truman,* George Pankratz, *Max Rahr, William Rahr, Reinhardt Rahr, C. A. Gielow,* and T. C. Shove, of said city, county, and state, sureties, are held and firmly bound unto the county of *Manitowoc,* in the state of Wisconsin, in the penal sum of two hundred thousand dollars, to be paid to the said county of *Manitowoc,* for which payment well and truly to be made we bind ourselves, our, and each of our, heirs, executors, and administrators, jointly and severally, firmly by these presents.

"Sealed with our seals, and dated this 31st day of December, A. D. 1890.

"The condition of this obligation is such that *whereas* the above bounden, the said T. C. Shove Banking Company, was *duly selected and designated by the county board* of said county, at its annual meeting duly held in the month of November, 1890, and which meeting commenced the Tuesday next succeeding the last general election held in said state, as a depositary of and for the funds of said county, *pursuant* to section 693 of the Revised Statutes of said state and acts amendatory thereof, and with which said banking company all funds now in the county treasury of said county and which shall hereafter be received by the treasurer of said county shall be deposited, *pursuant* to said section and acts amendatory thereof.

"*And whereas,* the said banking company, in consideration of the deposits so to be made, *having contracted* with said county board that said banking company will pay to said county, on all funds belonging to said county and which shall be deposited with said banking company, interest at the rate of three per cent. per annum on each average monthly balance *of so much of said funds as may at all times be subject to disbursement by said county treasurer,* at the end of each and every month, during the time such funds remain so on deposit, and that said banking company will pay to said county, on all funds of said county which

shall be deposited with said banking company and *which shall not be withdrawn therefrom until the expiration of one year from the date of such deposit, except it be so withdrawn by the order of said board,* interest at the rate of *four* per cent. per annum, payable one year from the date of such deposit.

"Now, therefore, if the said T. C. Shove Banking Company shall pay to said treasurer, or other person by law authorized to receive the same, all such interest on all such average monthly balances of said county funds deposited with said banking company *subject to the disbursement* of said treasurer, at the rate of *three* per cent. per annum, at the end of each and every month during the time such funds shall remain so on deposit as aforesaid, and if said banking company shall pay to said treasurer, or other person by law authorized to receive the same, all said interest on all funds which shall be deposited with said banking company and *not be withdrawn therefrom until the expiration of one year* from the date of such *deposit, unless otherwise ordered by said board,* at the rate of four per cent. per annum, on the date of the expiration of such year, and if such company shall pay over and deliver to the said treasurer, or other person by law authorized to receive the same, all moneys and funds belonging to said county and deposited with said banking company subject to the disbursement of said treasurer as aforesaid, on due demand being made therefor, and to pay and deliver to said treasurer, or other person authorized to receive the same, all such funds and moneys deposited with said company, not to be withdrawn until the expiration of one year from the date of such deposit, on the day of the expiration of said year, *or sooner if said board shall so order,* and that if the said banking company shall well and truly perform all other conditions and agreements by it to be performed by reason of the depositing of said county funds with said company, then this obligation shall be void, otherwise to be and remain in full force and virtue."

That bond was signed and sealed by each and all of the defendants.

On May 19, 1891, a resolution was adopted by said board, in effect ratifying the contract so made. All deposits of funds of said county made with said banking company after the date of said bond were so made under and pursuant to the aforesaid resolution, contract, and bond. On November 23, 1891, the county board adopted a report of its committee to the effect that the T. C. Shove Banking Company had agreed to continue the arrangement in regard to the interest on monthly balances, as agreed upon, for the next year. No other or further action in the matter than that stated in said report, together with the adoption thereof, was taken by said county board at its annual meeting in 1891. Under and pursuant to said resolution of November 26, 1890, and said contract and bond, the treasurer of said county commenced depositing county funds with said banking company January 2, 1891, and continued to so deposit said funds thereafter up to and until April 12, 1892.

On April 12, 1892, the said banking company made a voluntary assignment of all its assets and property, for the benefit of its creditors, to Adolph Piening, who thereupon qualified as such assignee and entered upon the discharge of his duties as such. On May 19, 1892, the said county board, in behalf of said county, demanded the money on deposit in said bank, with the accrued interest thereon, but said banking company, and each and every of its officers, refused to pay over said moneys and funds so demanded, or any part thereof. The county board, on May 21, 1892, duly demanded from each and every of said sureties the amount of said moneys and funds on deposit as aforesaid and then due and owing from said banking company to said county, but each of said sureties neglected and refused to pay said amount demanded, or any part thereof. Thereafter said county filed with said assignee its claim against said bank-

ing company for the amount of said funds, and said assignee paid thereon to said county dividends on its claim amounting to $12,838.78. No other or further sum has been paid to or received by said county on account of said funds so deposited.

This action was brought upon said bond, against the principal and sureties therein named, to recover damages by reason of said breaches of said bond. The defendant sureties denied liability on said bond. Upon the trial the facts were found substantially as stated, and also to the effect that December 1, 1893, there was due, owing, and unpaid to said county, from said banking company, upon said contract, and from all of said defendants upon said bond, on account of the funds deposited as aforesaid, for principal and accrued interest, the sum of $43,106. And as conclusions of law the court found, in effect, that the action of the county board, November 23, 1891, was not a new selection or designation of a depositary for the county funds, and did not affect or change said contract of December 30, 1890, nor terminate or affect the obligation of the defendants on their said bond, and that the said banking company, as principal, and the other defendants, as sureties, were bound by and were liable on their said bond, jointly and severally, to the county, for the amount due and owing thereon from said banking company; that the plaintiff was entitled to judgment against all of said defendants, jointly and severally, for the principal sum so on deposit and the accrued interest thereon, amounting in the aggregate to $43,106, together with costs and disbursements. From the judgment entered accordingly the said defendant sureties appeal.

For the appellants there were briefs by *Nash & Nash*, attorneys, and *Gabe Bouck*, of counsel, and oral argument by *Mr. L. J. Nash* and *Mr. Bouck*. They contended, *inter alia*, that ch. 87, Laws of 1885 (sec. 693, S. & B. Ann. Stats.), conferred on county boards a power not previously exer-

Manitowoc County vs. Truman and others.

cised or possessed; that the language "the county board of every county may annually at their first meeting, or within the month of June, . . . select some bank," etc., was neither mandatory nor directory, but merely permissive, clothing the board with a discretion to have the funds of the county placed in a bonded depository or have them remain in the care and custody of the county treasurer; that no county board is obliged to take any action pursuant to the law, but if it elects to act it must make the selection from year to year, annually, once each year, each recurring board acting independently and for itself; that the words "may . . . select," etc., grant a power, and the word "annually" is a restraint upon its exercise; that it was not the purpose of the statute to permit to be done annually what before could be done biennially or once in three, or five, or ten years, or once a month, but to allow an act to be done which before was not lawful at all, provided it be done once every year or oftener. The liability of a surety is *strictissimi juris* and cannot be extended by implication. *Drinkwine v. Eau Claire*, 83 Wis. 428; *State v. McFetridge*, 84 id. 500; Brandt, Suretyship (1st ed.), §§ 79, 80; Murfree, Off. Bonds, § 710; *Jenkins v. Gunnison*, 50 Wis. 393; *Wheeler & W. Mfg. Co. v. Brown*, 65 id. 99; *W. W. Kimball Co. v. Baker*, 62 id. 526; *U. S. v. Boyd*, 15 Pet. 187; *Miller v. Stewart*, 9 Wheat. 680; *McMicken v. Webb*, 6 How. 292; *U. S. v. Boecker*, 21 Wall. 652. The bond in suit is an official or statutory bond. Murfree, Off. Bonds, §§ 35–37; 2 Am. & Eng. Ency. of Law, 466*f*; *U. S. v. Boyd*, 15 Pet. 187. The law pursuant to which an official or statutory bond is given is imported into the instrument itself, to the same extent as if written in full in its recitals or conditions, and constitutes an essential part of the contract, defining and limiting the liability of sureties. *Sanger v. Baumberger*, 51 Wis. 592; *Morrow v. Delaney*, 41 id. 149; 2 Am. & Eng. Ency. of Law, 466*i*; Brandt, Suretyship, § 470; Murfree,

Off. Bonds, § 193; *King Co. v. Ferry*, 5 Wash. 536. The sureties' liability in this case, therefore, is the same as it would have been if the provision of the statute requiring a new selection of a depositary, a new contract, and a new bond to be made each year had been incorporated into the bond. Conditions or recitals of a bond, whether written or imported into it by operation of law, are limitations of, and restraints upon, the obligation. If the undertaking be expressed in general terms as to time, place, amount, duration, or term of office, its obligation is limited within the terms of the express or implied recitals. *Sanger v. Baumberger*, 51 Wis. 592; *Fond du Lac v. Moore*, 58 id. 170; *National M. B. Asso. v. Conkling*, 90 N. Y. 116; *Miller v. Stewart*, 9 Wheat. 680; Murfree, Off. Bonds, § 182; Brandt, Suretyship, §§ 138–141; *London Ass. Co. v. Bold*, 6 Q. B. 514; *Hassell v. Long*, 2 Maule & S. 370; 2 Am. & Eng. Ency. of Law, 464. The failure to specify in the bond a definite term during which it should remain in force is not available to the plaintiff. *King Co. v. Ferry*, 5 Wash. 536; *Brown v. Lattimore*, 17 Cal. 93. The sureties on the official bond of an officer elected or appointed annually are liable only for his official acts during the term. And it makes no difference if the term specified in the bond is indefinite as to duration, or is stated to be longer than the term fixed by law or by the terms of the appointment. 2 Am. & Eng. Ency. of Law, 466*m*, note 5; Murfree, Off. Bonds, §§ 621, 622, 625, 626, 644; Brandt, Suretyship, §§ 139–142; Throop, Pub. Off. § 207; *Moss v. State*, 47 Am. Dec. 116; *Chelmsford Co. v. Demarest*, 7 Gray, 1; *Dedham Bank v. Chickering*, 3 Pick. 340; *Boston H. Manufactory v. Messinger*, 2 id. 235; *U. S. v. Eckford's Ex'rs*, 1 How. 250; *South Carolina Soc. v. Johnson*, 10 Am. Dec. 644; *Savings Bank v. Hunt*, 72 Mo. 601. Where the term is for some fixed and definite period of time and until a successor shall be elected or appointed and qualified, the sureties' liability extends beyond the fixed

period a reasonable time — long enough to enable a successor to be elected and to qualify, and no longer. Murfree, Off. Bonds, §§ 225, 625, 626, 644; Brandt, Suretyship, §§ 458, 460; 2 Am. & Eng. Ency. of Law, 466*m*, note 5; *Chelmsford Co. v. Demarest,* 7 Gray, 1; *Amherst Bank v. Root,* 2 Met. 522; *State v. Powell,* 40 La. Ann. 241; *Fond du Lac v. Moore,* 58 Wis. 170; *Omro v. Kaime,* 39 id. 468. If an official or statutory bond specifies in its conditions less than the statute requires, it will, nevertheless, be enforced as far as it goes. If it enlarges upon the statute, the enlargement will be treated as surplusage and the bond held good for no more than the statute requires. Murfree, Off. Bonds, §§ 38–40; *U. S. v. Hodson,* 10 Wall. 395; *U. S. v. Bradley,* 10 Pet. 364; *Alleghany Co. v. Van Campen,* 3 Wend. 48; Throop, Pub. Off. §§ 192, 193; 2 Am. & Eng. Ency. of Law, 466*f*, 466*g*.

For the respondent there were briefs by *Schmitz & Kirwan,* attorneys, and *Winkler, Flanders, Smith, Bottum & Vilas,* counsel, and oral argument by *Michael Kirwan* and *F. C. Winkler.*

CASSODAY, C. J. The questions presented turn upon the construction to be given to the bond set forth in the foregoing statement, and the statute pursuant to which it was given, and which reads as follows: "The county board of every county *may annually* at their first meeting, or within the month of June, *and as often thereafter as they shall determine,* select some bank, banks, or banking association, with which all funds then in the county treasury, or which shall *thereafter* be received by the treasurer of such county, shall be deposited; provided, however, that such bank, banks, or banking association shall, before receiving such funds, give security in *the same manner* as is now required of the treasurer of such county, for the safe keeping and proper disbursement of such funds, which security shall be approved

by the county board. Such county board *shall, before or after* so selecting depositaries, *contract* with them for the payment to such county of such interest upon the funds deposited *as they may mutually agree upon;* and the *county board may, at any time,* when in their opinion the safety or interest of the county requires it, *direct all sums so deposited by the county treasurer to be paid into the county treasury, or to such other bank or banks as they may select.* This act shall not apply to counties in which the total assessed valuation, as determined by the state board of assessment for the year 1884, is less than six millions of dollars." S. & B. Ann. Stats. sec. 693 (Laws of 1885, ch. 87).

It is manifest that under this section the plaintiff county was not absolutely bound to select some bank as such depositary, but it was left optional with the county board to make such selection or not, as it might in its wisdom determine. But it is contended that when such power is exercised it can only be for a single year or until the next meeting of the board; that it must make such selection " annually," and at each such annual selection make a new contract and obtain a new bond, even when the same bank is continued as such depositary. This would, as we think, be a very strained construction, and one not warranted by the language employed. True, the county board " may *annually* at their first meeting, *or* within the month of June, *and as often thereafter as* they shall determine, select some bank," etc. The statute requires the annual meeting of the county board to be held in November of each year. S. & B. Ann. Stats. sec. 664. This being so, it is quite manifest that by the language quoted the legislature authorized such selection by the county board at their first annual meeting in November or in June, and as often thereafter as they should determine. The object of the statute was to authorize the county board of every county coming within its provisions to temporarily loan the funds of the county to a bank to be

Manitowoc County vs. Truman and others.

designated, for the purpose of obtaining interest thereon, upon such bank giving security in the same manner required of county treasurers, and to that extent relieve the county treasurer of liability. No purpose could be served by arbitrarily requiring a renewal of such selection, contract, and bond at every annual meeting of the board, or at the meeting thereof in June, nor at any other particular time, and hence no such requirement was made. That there was no intention that such depositary should arbitrarily continue for just a year, or any other fixed period, is manifest from the fact that such county board was expressly authorized by the same statute to withdraw such funds from such depositary "*at any time when in their opinion* the safety or interest of the county required it," and to direct the same "to be paid into the county treasury, *or to such other bank or banks as they*" *might select.* "Where the main object and intention of a statute are clear, it must not be reduced to a nullity by the draftsman's unskilfulness or ignorance of the law, except in the case of necessity or the absolute intractability of the language used." *Salmon v. Duncombe,* L. R. 11 App. Cas. 627. Even penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature. *U. S. v. Wiltberger,* 5 Wheat. 76. In view of the contents of the section and its purpose as therein expressed, we cannot hold that the word "annually," as used in the section, should be construed as a mandatory requirement that a new selection of a depositary and a new contract with the same must be made, and a new bond must be taken, at the expiration of every year.

It is undoubtedly true that the liability of sureties cannot be extended by doubtful construction or implication. If they are held liable in this case, it is because there has been a breach of their express contract. The bond upon which the action is based purports to be given pursuant to the statute. By the express terms of the bond the banking com-

pany was to pay three per cent. on average monthly balances, and four per cent. on all funds remaining on deposit under the contract for more than one year from the date of such deposit. As such deposits were necessarily to be made from time to time after the giving of the bond, it was obviously in the contemplation of all parties to the bond that the same should remain in force during the continuance of such deposits; hence, longer than a year. The same is true as to the resolution adopted by the county board November 26, 1890, and the agreement made December 30, 1890. Besides, the agreement recites the adoption of the resolution, and the bond recites the making of the agreement. But neither the resolution nor the agreement nor the bond required any such deposit to remain with the banking company for a year or any specific period. On the contrary, each and every of such deposits, by the express language of the bond as well as the resolution and the agreement, was subject to be withdrawn at any time by order of the county board. Such right of withdrawal of such deposits at any time by the county board, so provided for in the bond, contract, and resolution, is in strict conformity to the section of the statute quoted. True, the statute does not expressly authorize the agreement for interest at the rate of three per cent. only on average monthly balances, and four per cent. only on such moneys as remained on deposit for one year; but the section of the statute quoted does expressly provide that "such county board shall, before or after so selecting depositaries, *contract* with them for the payment to such county *of such interest* upon the funds deposited as they *may mutually agree upon.*" Obviously, no bank would agree to pay a specific rate of interest on any deposit, without any regard to the length of time the money was so to remain on deposit. It would seem that the right to so contract for the payment implies the right to fix the terms of the contract, so long as it is not repugnant to any of the provisions of

that section, nor to any statute, nor to any principle of public policy. The authorities go further, and hold, in effect, that an obligation entered into voluntarily and for a sufficient consideration, unless it contravenes the policy of the law or is repugnant to some statute, is valid at common law, notwithstanding the attempt may have been to execute it pursuant to a statute with the terms of which it does not strictly comply. *Barnes v. Brookman*, 107 Ill. 318; *Sooy v. State*, 38 N. J. Law, 324; *Ordinary v. Heishon*, 42 N. J. Law, 15; *U. S. v. Linn*, 15 Pet. 311; *U. S. v. Hodson*, 10 Wall., 395.

As indicated, the duration of the contract between the county and the banking company was unfixed, and was liable to be terminated by order of the county board at any time. So, it would seem the sureties were at liberty to terminate the agreement, so far as they were concerned, at any time, on giving notice. *Reilly v. Dodge*, 131 N. Y. 153; *Emery v. Blatz*, 94 N. Y. 408; *Offord v. Davies*, 104 Eng. C. L. 748; *Hyland v. Habich*, 150 Mass. 112.

It will be observed that the statute nowhere prescribes the form of the bond, otherwise than to require the bank to "give security in the same *manner* as" the county treasurer is required, "for the safe keeping and proper disbursement of such funds," and which security must be approved by the county board. The statute prescribes a form for the bond of the county treasurer. S. & B. Ann. Stats. sec. 710. But the form thus prescribed contains several things inappropriate to the security to be given by such bank. The bond in suit was duly approved by the county board, and we are constrained to hold that it was given substantially in the "same manner" as thus prescribed, and that it was in all respects within the general scope and purpose of the statute, and hence is valid.

It is hardly necessary to add that the action of the county board adopting the report of its committee, to the effect

that said banking company had agreed to continue the arrangement in regard to the interest on monthly balances, as agreed upon, for the next succeeding year, was nothing more than a determination not to withdraw the funds from the bank nor to ask for any different agreement as to interest or security. For reasons already given, we do not think it operated as an extension or renewal of the contract, so as to discharge the sureties.

*By the Court.*— The judgment of the circuit court is affirmed.