## M. SNATTINGER v. THE CITY OF TOPEKA.

### No. 16,044.

#### SYLLABUS BY THE COURT.

SURETYSHIP—*Bond of City Depositary—Designation—Repeal and Reënactment of Statutes—Release of Surety.* In chapter 37 of the Laws of 1881, relating to cities of the first class, was a provision authorizing the mayor and council to designate a bank as a depositary of the public funds upon the giving of a bond conditioned that the deposits should be promptly paid upon the checks and drafts of the treasurer. In chapter 34 of the Laws of 1883 this provision was slightly amended, and under it a depositary was designated and the bond in question, which was signed by the defendant, as surety, was given. In 1903 there was a revision of the laws relating to cities of the first class (Laws 1903, ch. 122), and the provision relating to depositaries was reënacted substantially as it had appeared in the prior acts. When the new provision was enacted the section containing the prior provision was repealed. In an action upon the bond, *held:* (1) The provision relating to depositaries continued uninterruptedly in force notwithstanding the changes in the form of the statutes, and the enactment of the later act did not abrogate the ordinance passed in pursuance of the earlier one. (2) Where a bank is named as a depositary of city funds and tenders a bond signed by sureties, in which it is recited that the bank has been "duly designated" as a depositary, and then for a number of years the funds of the city are deposited in the bank in reliance upon the bond, and thereafter there is a default in the conditions of the bond, the bank will be deemed to be at least a *de facto* depositary, and the sureties on such bond will be held liable although the steps prescribed by law in making the designation of the depositary may not have been strictly followed. (3) A designation of a bank as a depositary is effectual so long as the city shall continue to deposit its funds in the bank, and the bond given in pursuance of such designation is deemed to be a continuing obligation upon which the sureties will continue to be liable for defaults, unless they have taken the necessary steps to terminate their liability on such bond.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed June 5, 1909. Affirmed.

*Z. T. Hazen, R. H. Gaw,* and *J. B. Larimer,* for the plaintiff in error.

*F. G. Drenning,* and *W. C. Ralston,* city attorney, for the defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This is an action· by the city of Topeka on a bond which was given to it by the First National Bank of Topeka, Kansas, as a depositary of city funds, and which was executed by M. Snattinger as surety.   The bond was given on May 22, 1897, in pursuance of chapter · 37 of the Laws of 1881, as amended by chapter 34 of the Laws of 1883.   Under the statute as it existed in 1897 the city of Topeka passed an ordinance declaring that "the Bank of Topeka, the First National Bank, the Central National Bank and the Merchants' National Bank are hereby designated as the official depositaries of the city of Topeka and that all public moneys of the city of Topeka shall be deposited in said banks."   A few days later the First National Bank tendered the bond in question, signed by the defendant, Snattinger, reciting that the bank had been duly designated by the mayor and council of the city of Topeka as one of the banks in which it was the duty of the treasurer of the city of Topeka to deposit daily all public money coming into his hands.   It contained a condition that the bank should safely keep and account for all money coming into its hands belonging to the city of .Topeka, and should promptly pay over all deposits of the city on the checks and drafts of the city treasurer.   The bond was approved by the city, and under this contract relation the city deposited funds with the bank from day to day from May, 1897, until June, 1905, when the bank became insolvent.   During this period of time, and without any other designation or renewal of the bond, the city deposited funds with the bank amounting to

Snattinger v. Topeka.

hundreds of thousands of dollars, and when the bank suspended payment it held of the city's funds the sum of $26,241.80. A great part of this amount has been paid by the receiver out of the assets of the bank, and it is to recover the balance of these funds that the present action is brought against Snattinger. It may be added that Snattinger was a stockholder of the bank during all of the time the bank acted as depositary and he was a director of the bank until 1901. A petition setting up the foregoing facts, including a copy of the bond, was attacked by a demurrer, which the court overruled, and upon that ruling error is assigned.

It is insisted that the bond is not a binding obligation because the First National Bank was not named as a depositary in conformity with law. It is first said that the bond recites that it was given under the law of 1881 when as a matter of fact that provision had been repealed. The act of 1881, it will be observed, is a general charter act providing for the government of cities of the first class. In 1883 a few of the sections of the act of 1881 were amended and the old sections declared to be repealed. Among them was the section relating to the care of city funds, including the designation of banks in which to deposit city funds. The new sections enacted in 1883 were substituted for the old, and in effect became parts of the city charter act of 1881. Aside from that, the provision relating to city depositaries was reënacted in 1883 in almost the language of the earlier act. It should therefore be construed as a continuation of the act of 1881 and not as a new enactment, and fully warranted the ordinance enacted in 1897. In *Carney v. Neeley*, 60 Kan. 672, it was contended that the reënactment of a statute operated to abrogate a city ordinance, and it was said:

"It is true that there have been revisions of the statutes relating to cities, but in these the provision in question has been reënacted substantially in the same language, and in this way it has been con-

tinued uninterruptedly in force. Such reënactment, although one statute was substituted for another, did not abrogate the ordinance authorized by the statute, for the reason that the statutory authority for the ordinance was never withdrawn. Such cases are likened to the adoption of a new constitution, with respect to which it has been held that the laws passed under the old constitution, and which are in harmony with the provisions of the new, remain in force the same as though no new constitution had been adopted." (Page 675.)

(See, also, *Jockers v. Borgman*, 29 Kan. 109; Gen Stat. 1901, § 7342, subdiv. 1.)

There is a contention that the act of 1883, which was in force when the ordinance was enacted and the bond given, only authorized the designation of a single bank, and that as the Bank of Topeka was the first named no other bank could be named, and therefore the designation of the First National Bank, which was second in the list, was unauthorized. It is not easy to say that one of the banks should have preference over another, as the four banks were designated at the same time and by the same ordinance. While the act of 1883 authorized deposits "in some responsible bank" (§ 7), it is not clear that the legislature intended that only one bank could be designated, nor that the power of the city in that respect was exhausted when one bank had been chosen. However that may be, neither the bank nor the surety can be heard to question the sufficiency of the designation. In the bond which defendant signed and the city accepted it is stated that "the First National Bank has been *duly designated* by the mayor and council of the said city of Topeka by Ordinance No. 1908 as one of the banks in which it is and shall be the duty of the city treasurer of Topeka, Kan., to deposit daily all public money coming into his hands" etc. The bond containing this recital was accepted, and under the bond and recited designation the moneys of the city were deposited with

the bank for a period of more than eight years. Deposi-
taries are official agents of municipalities and are *quasi*-
public officials. If a depository, although not regularly
appointed, assumes to act as a depository, and is rec-
ognized as such and receives and holds the public funds
under a designation and bond, it is at least a *de facto*
depository.

In *County of Meeker v. Butler,* 25 Minn. 363, it was
contended that an appointment as depository had not
been made in accordance with the requirements of
law, and further that there was no liability on the bond
given under the illegal designation. In the bond was
a recital that it had been "duly taken and received,"
and the court held as follows:

"A bond having been executed and approved, and
containing the recital of Butler's designation as de-
pository of the county's moneys, and thereupon the
money of the county having been deposited by the
county treasurer with Butler, and received by him pre-
sumably under the bond, and the county treasurer
having no authority to deposit, or Butler to receive,
such moneys, except upon the basis that Butler is the
legal depository thereof, under chapter 38, if Butler
has been duly designated as depository in the manner
provided by law, his sureties are clearly liable for any
breach in the condition of the bond; and if he has not
been so duly designated, they are equally liable because
they are, as against the public, *i. e.,* the county, es-
topped to deny such designation, by the consideration
that to permit such denial would be to allow them to
take advantage of their own wrong in unlawfully get-
ting possession of the county moneys. In any event,
then, the objection taken is untenable." (Page 364.)

In *Board of County Commissioners v. Gray,* 61 Minn.
242, the supreme court of Minnesota held on a bond like
the one in question that the provisions of the statute re-
lating to the designation of county depositaries were
for the benefit of the public and not for the sureties, and
that, where the depository was actually designated by
the board of auditors, a failure to comply with the re-

quirements of the statute in making such designation would not affect the liability of the sureties; or, in other words, if the principal in the bond was a *de facto* depositary of the county funds, recognized as such by the county treasurer and other officers, and the county funds were actually deposited with the principal as such depositary in reliance on the bond, the sureties were liable in case of default in the conditions of the bond, although in law the principal was never designated as a depositary. (See, also, *Board of County Commrs. v. State Bank,* 64 Minn. 180; *Board of Co. Commrs. v. American L. & T. Co.,* 75 Minn. 489; *Buhrer v. Baldwin,* 137 Mich. 263.)

It is argued that as the legislature of 1903 enacted a complete city charter act and repealed all prior acts relating to cities of the first class it became the duty of the city to designate new depositaries under the new act, and in no event could defendant be held liable for deposits made after the passage of that act. In the act of 1903 the places of deposit are spoken of as "bank or banks" instead of "bank," as in the earlier acts, but in all essential features the provisions of the new act are substantially the same as the old. While the new act contains a general repealing clause, there is also an express provision that "all existing laws and ordinances not inconsistent with the provisions of this act shall remain in full force and effect, . . . and all contracts heretofore entered into by any city shall remain in full force and can be completed under existing laws." (Laws 1903, ch. 122, § 198.) It is manifest that the provisions of the act relating to depositaries were only a continuation of the prior ones, and, as we have seen, the new act did not abrogate the ordinance making the designation nor annul the bond given in pursuance of it. (*Carney v. Neeley,* 60 Kan. 672.)

It is further argued that the bond should not be regarded as a continuing obligation; that the defendant could not have understood or intended that his liability

should continue indefinitely, and that it must be limited to the term of the city treasurer when the bond was given. The statute authorizing the designation of a depositary does not undertake to prescribe how long the bank shall act as depositary, nor did the ordinance or bond purport to fix the duration of the contract relation. The act as well as the bond proceeds upon the theory that the duration of the contract shall continue as long as deposits are made and received. In the absence of a provision authorizing the mayor and council to designate a bank as a depositary of city funds for a definite period of time a designation will be effectual so long as the city may place its funds in the bank. Of course, the mayor and council are at liberty to change depositaries whenever the public safety requires it. In a somewhat similar case it was said:

"The prime consideration is the safety of the public funds, and the manifest purpose of the law-makers was that the board should be wholly free to change the depositary whenever it had reason to believe that the public interest would be best subserved by such a course." (*National Bank v. Peck,* 43 Kan. 643, 648.)

(See, also, *Bank v. Honey,* 58 Kan. 603; *Manitowoc County v. Trueman and others,* 91 Wis. 1; *Commonwealth v. Reading Savings Bank,* 129 Mass. 73; *Cambridge v. Fifield,* 126 Mass. 428; *Elam v. Commercial Bank,* 86 Va. 92.)

To hold the bond to be a continuing obligation does not tie the hands of the mayor and council, nor does it mean, as defendant contends, that there is no limit to the liability of a surety on such a bond. Ordinarily a surety may terminate his liability on a bond where it has no definite time to run and where the principal has broken the condition of the obligation. (*Emery v. Baltz et al.,* 94 N. Y. 408; *Reilly et al. v. Dodge et al.,* 131 N. Y. 153; *Manitowoc County v. Trueman and others,* 91 Wis. 1; *Hyland v. Habich,* 150 Mass. 112.) Since the defendant might have terminated his liability on the bond by a proper notice he can hardly com-

plain of the failure of the city to make a new designation or to demand a new bond. Throughout the period in which the bank acted as a depositary for the city the defendant was one of the owners of the bank, and for a share of the time he was a director of the bank. He had an excellent opportunity to know that the bank was receiving deposits from the city from day to day under the bond which he had signed.

The decision of the trial court overruling the demurrer to plaintiff's petition is affirmed.