Holmes *v.* Elder *et al.*

(*Jackson,* April Term, 1936.)

Opinion filed May 23, 1936.

TAYLOR, ADAMS & FREEMAN, W. W. HERRON and W. R. LANDRUM, all of Trenton, for appellant.

HARRY H. ELDER and W. R. KINTON, both of Trenton, and LLOYD S. ADAMS and J. D. SENTER, JR., both of Humboldt, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Petitioner Holmes recovered a judgment for $12,471.35

in the trial court, Circuit Judge Bond sitting for the chancellor by interchange, against Elder *et al.*, as sureties on a bond for $20,000 executed in 1927 to secure the payment to petitioner of his deposits in the Gibson County Bank, principal on the bond. The Court of Appeals reversed and dismissed the bill, and this court granted *certiorari* and has heard argument.

When the bond was made, petitioner was serving his second term as clerk and master and he was reappointed in 1931. The bank failed in 1932. Although the bond did not express any limitation as to time, the Court of Appeals was of opinion that "the law read into the bond sued upon the provision that it would expire with obligee's term of office, to-wit: October 19, 1931, and that, therefore, the sureties were discharged of all liability thereon when Mr. Holmes qualified for his third term on October 19, 1931." The chancellor had held the sureties liable, being of opinion that "there was no limitation as to time in the bond," and that, "to construe it with reference to expiration of the term in which made would be to read into the bond a provision not inserted therein." Said he:

"I find no analogy in this respect between bonds of public officials and depositary bonds, as insisted by defendants, and as held in the case from the Court of Appeals (Colo.) relied on by defendants, for the reason that terms of office for which bond is given by public officers are fixed by Statute and sureties thereon necessarily engage themselves to be liable only for the fulfillment of the officer's contract with the Government for the term of his office.

"The term of the depositary is not fixed in this case either by Statute, or by the terms of the undertaking.

On the other hand, the express terms of the bond are that the sureties will be liable for funds now deposited, or hereafter deposited, by Holmes, Clerk and Master, and without any limit as to time when deposited.''

As the determination of the issue thus presented calls for a construction of this bond, it is here quoted in full:

''Know all men by these presents, that we, Gibson County Bank, as principal, and T. K. Happel, W. A. Cresap, A. S. Elder, R. R. Collins, J. E. Arnold, and Harry H. Elder, as sureties are each held and firmly bound unto F. G. Holmes, Clerk and Master of the Chancery Court at Trenton, Tennessee, and his successor in office, in the sum of Twenty Thousand Dollars ($20,-000.00), for the payment of which we bind ourselves and each of us, our heirs, executors or administrators jointly and severally by these presents.

''The condition of this obligation is this:

''This bond is made to cover any and all funds that may be deposited now or hereafter in said bank by said Clerk and Master to his credit as such Clerk and Master. Now, if said Gibson County Bank shall safely keep said funds of said Clerk and Master and pay out the same upon checks drawn by him as such Clerk and Master on said funds in said bank, then this obligation is to become null and void and of no further effect, otherwise, to remain in full force and virtue.

''Witness our signatures and the signature of the Gibson County Bank by its duly authorized officers on this the 2nd day of March, 1927, at Trenton, Tennessee.

''[Signed]
''A. S. ELDER, Surety
''R. R. COLLINS
''J. E. ARNOLD (Surety)

"HARRY H. ELDER (Surety)
"GIBSON COUNTY BANK
  "By T. K. HAPPEL, Pres.
  "By W. A. CRESAP, V. P.
  and Cashier
"T. K. HAPPEL, Surety
"W. A. CRESAP, Surety."

Laying grounds for its conclusion, the opinion of the Court of Appeals first holds that the obligation is one of suretyship, rather than of guaranty, and stresses the rule that obligations of this character are to be strictly construed and may not be extended by implication beyond the express terms of the undertaking. *Hardison & Co.* v. *Yeaman,* 115 Tenn., 639, 649, 91 S. W., 1111; *City of Sterling* v. *Wolf,* 163 Ill., 467, 45 N. E., 218.

■ ■ It might well be contended that the obligation sued on is one of guaranty, that the primary obligation to pay these depositors was that the bank, an obligation wholly independent of this bond, and that the bond was a collateral undertaking only to answer for the default of the bank. However, conceding that the contract here is one of suretyship, the rule is one for guidance in construction only, and is subject to the basic rule that the instrument is to be considered as a whole, in the light of the circumstances surrounding its making, with the primary purpose of ascertaining just what was within the contemplation of the parties. As expressed by Edward Beal, English author and scholar, in his Cardinal Rules of Interpretation ( 2 Ed.), page 71, "The purpose of interpreting an instrument is to see what is the intention expressed by the words used. If from the imperfection of language it is impossible to know what the intention is without inquiring further, then

see what the circumstances were with reference to which the words were used, and what was the object, appearing from those circumstances, which the persons using them had in view."

And just here, as bearing on the application in the instant case of the *stricti juris* rule invoked, it will be borne in mind that this rule of construction is not applied in all cases of suretyship. Quite generally it is confined to cases of volunteer, uncompensated, accommodation sureties, and not extended to corporate or other paid sureties. This distinction is recognized in our cases, and it was pointed out by MR. JUSTICE LURTON, at one time the distinguished Chief Justice of this court. in *Supreme Council Catholic K. of A.* v. *Fidelity & Casualty Company* (C. C. A.), 63 F., at page 58, in these words:

"With reference to bonds of this kind, executed upon a consideration, and by a corporation organized to make such bonds for profit, the rule of construction applied to ordinary sureties is not applicable. The bond is in the terms prescribed by the surety, and any doubtful language should be construed most strongly against the surety, and in favor of the indemnity which the assured had reasonable ground to expect. The rule applicable to contracts of fire and life insurance is the rule, by analogy, most applicable to a contract like that in this case."

Now, while the bond before us is not a corporate bond, or one for which it appears that a consideration was directly paid, when the underlying reasoning is considered an analogy is apparent. The signers are the president and the cashier and other officers and stockholders of the principal obligor; *prima facie* they drafted

the instrument they signed, and they became parties to this obligation for the purpose, not alone of securing to this depositor the repayment of trust funds coming into his hands officially, but of securing to themselves, through the institution which they officered and in part owned, the financial benefits incident to the use and handling of such funds. Indeed, their relation to this contract of indemnity, while on the face thereof and technically, that of sureties, partook, in substance and in fact, of that of principals. So that, we are not inclined to adopt the view that that special and tender consideration commonly accorded personal, uncompensated sureties is due respondents here. We quote from *National Surety Co.* v. *Campbell,* 108 Wash., 596, 185 P., 602, 604, as follows:

"Admitting the rule that in every doubtful case the presumption should be against a continuing guaranty, especially in the case of an uncompensated surety, yet where the indemnitor was a stockholder and director in the bank, was interested in seeing that it secured deposits of public funds, and knew that the purpose of the law was to require absolute security before the funds could be so deposited, which security must continue so long as the funds remained on deposit and in the light of that knowledge he contracted to indemnify the person providing that security, we can see no doubt of the indemnitor's intention.

" 'In the interpretation of indemnity contracts, the cardinal rule is that which applies to contracts generally, i. e., to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. . . .' 14 R. C. L., p. 46."

Much is said in the opinion of the Court of Ap-

peals and on the briefs as to whether or not this bond is a "continuing" obligation. It clearly belongs to the continuing class. A guaranty may be continuing, or may be exhausted by one act. The governing principle is this: When it appears that the guaranty looked to a future course of dealing for an indefinite time, it is a continuing guaranty, limited only as to amount prescribed. If by its terms it is confined to a single trans-action, liability thereon ceases with execution or performance of that transaction. An interesting discussion of the subject will be found in the opinion of MR. JUSTICE STORY in *Douglass* v. *Reynolds,* 7 Pet., 113, 123, 8 L. Ed., 626.

Plainly, we have here a contemplation of a future course of dealing, calling for a constant succession of transactions as parts of a whole. The pertinent question is only how long was it to continue? What time limit was placed or intended to be placed on its operation?

Respondents say, and the Court of Appeals held, that it was to continue only for the balance of the then term of office of the clerk and master. This is the issue and the only issue.

It must be conceded, and indeed is conceded in the opinion of the Court of Appeals, that no such limitation is expressed in terms. On the other hand, we are of opinion that a contrary intention is expressed in terms, by the use of the language, "F. G. Holmes, Clerk and Master of the Chancery Court at Trenton," followed by the words, interlined, thus giving them emphasis, "and his successor in office," and by the language, "This bond is made to cover any and all funds that may be deposited now or hereafter in said bank by said Clerk and Master to his credit as such Clerk and Master."

The words "by said Clerk and Master" refer back to the obligee in whose favor, by the terms of the preceding paragraph of the instrument, it was provided that the obligation was to run, namely, "F. G. Holmes, Clerk and Master of the Chancery Court at Trenton, Tennessee, and his successor in office." The argument that refuses effect to the words "and his successor in office" because they appear in the "premise," rather than in the "condition" of the bond, seems to us too technical and strained. The instrument as a whole, and every part of it, must be looked to in arriving at the intention. "The whole words and clauses are to be construed together, and that sense is to be given to each, which best comports with the general scope and intent of the whole." *Douglass* v. *Reynolds, supra.*

And if we look beyond the instrument and consider the circumstances of its execution, this view is strengthened. It appears that Mr. Holmes had previously kept his official funds distributed in several banks. As an inducement to him to consolidate them in the Gibson County Bank, and to assure him against the danger of heavy loss that might result from such a concentration, from the carrying of all his eggs in one basket, proverbially fraught with risk, these gentlemen, financially interested in and managing this bank, gave him this indemnity. If it had been their purpose to limit the protection of this contract to his then term, they could and should have plainly so provided. But no reason can be conceived of for the entertaining of a purpose to so limit this protection. The benefit to their principal would continue over undiminished and their risk would in no wise be increased; while, on the other hand, his requirement of protection would in no degree be abated.

And what is just said suggests a determinative difference between this case and those Tennessee cases relied on for respondents which limit the liability on official bonds (*Yoakley* v. *King,* 78 Tenn. [10 Lea], 67, 72; *State* v. *Cole,* 81 Tenn. [13 Lea], 367, 371; and *Bowen* v. *Evans,* 1 Lea, 107) to the present terms of the officials. The obligations of sureties on official bonds are naturally and necessarily incurred with the personality—the moral character and financial responsibility—of the particular incumbents in mind. A change in the holder of the office automatically works a change in the risk. Given sureties may be willing to guarantee the conduct and official obligations of one person and wholly unwilling to extend such guaranty to another. A material change in the risk is involved, which in insurance contracts generally releases the insurer. But this principle has no application to a depositary bond, such as this. The shoe is on the other foot. It can be of no material concern to the obligors on such a bond as we have before us whether they guarantee the payment of the deposits to F. G. Holmes, or to his successor, and, even more clearly, it can be of no importance whether payment is required to be made to F. G. Holmes holding the office in one term, or in another, succeeding himself. In this view the reason of the rule of limitation, applied by the Court of Appeals in this case, seems to us wholly to fail, and with it falls the rule; and, searching for the intention in the making of this bond, it becomes increasingly difficult to find that such a limitation was in fact in the contemplation of the parties. Looking to the brief of counsel for respondents, it is apparent that it is rested mainly on the assumption that the rule applied to official bonds applies alike to depositary bonds,

and the authorities cited, with but one exception herein after discussed, deal with official bonds.

Aside from the line of Tennessee cases dealing with official bonds above distinguished and found to be inapplicable, and a few from other jurisdictions of like import, the Court of Appeals and counsel for respondents rely alone upon and quote extensively from *Bonney* v. *Robertson*, 6 Colo. App., 485, 41 P., 842, decided in 1895. While this decision of an intermediate court is cited by the Supreme Court of Colorado in *Hurlburt et al.* v. *Kephart*, 50 Colo., 353, 115 P., 521, 525, the citation was on a point of evidence only, and involved no approval of the holding touching the issues pertinent here. The holding in *Hurlburt* v. *Kephart* is not itself an authority on the point involved in this case, although the opinion contains expressions approving rules of construction hereinbefore indorsed.

It is to be conceded that the *Bonney Case* affords support to the holding of the Court of Appeals in this case. However, the bond involved differed materially in this respect, at least, it did not run to the named obligee "and his successor in office," as does that now before us, and the court found no intention expressed on the face of the instrument, or by the circumstances surrounding its execution, to have its obligation extend to a successor. But the authority of that case is weakened for application here, in our view, by references in the opinion to the rule governing cases of official bonds, and an obvious failure to distinguish the principle controlling such cases from that applicable to depositary bonds, which distinction we have attempted to point out.

On the other hand, counsel for petitioner rely strongly on *Kelly* v. *Moab State Bank*, 64 Utah, 290, 230 P., 566,

571, 572, decided by the Supreme Court of Utah in 1924. While not identical on its facts with the instant case, it is so similar as to warrant reliance on its holding that "the bond sued upon," which had been given to secure deposits of a county treasurer in a bank, "was, upon its face and in contemplation of the parties, a continuing obligation, running to the appellant, as treasurer of Grand county, and to his successor in office," and the sureties were held liable. The opinion cites 18 C. J., p. 592, for the rule that where there is no specific limitation with respect to the terms of the bond it is a continuing obligation for no definite or fixed time. After reviewing other cases, that court has this to say of *Bonney* v. *Robertson, supra:* "Finally, counsel for respondents cites the case of *Bonney* v. *Robertson*, 6 Colo. App., 485, 41 P., 842, as being a case directly in point. This seems to be an isolated case, decided by the Colorado Court of Appeals. The doctrine advanced does not appear to have been followed in subsequent decisions, and to our mind is against the weight of authority."

Other cases cited for petitioner, while not on all fours on the facts with the instant case, contain expressions and conclusions in harmony with *Kelly* v. *Moab State Bank, supra*. These are: *Snattinger* v. *City of Topeka*, 80 Kan., 341, 102 P., 508; *Buhrer* v. *Baldwin*, 137 Mich., 263, 100 N. W., 468; *Yeargain* v. *Board of Commissioners*, 90 Okl., 38, 215 P., 619; *National Surety Co.* v. *Campbell*, 108 Wash., 596, 185 P., 602, 604; *City of Cheyenne* v. *Maryland Casualty Co.* (D. C. Wyo.), 13 F. (2d), 401. Through the opinions in these cases runs recognition of the rule that depositary, as distinguished from statutory official bonds, unless expressly limited by their terms, are continuing obligations, upon which the sureties

will continue to be liable for default so long as the bank, their principal, is continuing to receive the deposits of the obligee, unless they shall take steps to terminate their liability.

The decree of the Court of Appeals must be reversed and that of the chancellor affirmed.