Thelma H. Day *v.* Frank Walton *et al.*

(*Nashville,* December Term, 1954.)

Opinion filed August 2, 1955.

12

ALBERT WILLIAMS and HUGH C. HOWSER, both of Nashville, for plaintiff.

THOS. O. H. SMITH, J. C. CORBITT, JOHN T. CONNERS, JR., B. H. HAGEY, J. G. LACKEY, JR., JACK NORMAN and JAY G. STEPHENSON, all of Nashville, for defendants.

14

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Certiorari has been granted to the Court of Appeals, oral argument has been heard and we now dispose of the case.

Thelma Day sued Frank Walton, John T. Dowell, Alvin Futrell, H. H. Thomas, Hartford Accident & Indemnity Company, Standard Accident Insurance Company and the Metropolitan Casualty Insurance Company, seeking to recover damages for personal injuries consisting of a pistol shot wound allegedly inflicted by the negligent firing of a pistol by defendant Frank Walton. The defendants Dowell and Futrell were alleged to be jointly liable with Walton because they were acting upon a common enterprise with said Frank Walton, and H. H. Thomas was alleged to be liable as the employer of the above three mentioned special policemen. The three bonding companies were sued only in the second count of the declaration as sureties upon the special bonds of Walton, Dowell and Futrell. The bond executed by Hartford was as follows:

"Know all men by these presents: That we, Frank Walton, principal, and Hartford Accident and Indemnity Co., Surety, are held and firmly bound unto the City of Nashville, Tennessee, and its successors in office, in the penal sum of

one thousand dollars

for the payment of which we bind ourselves, our

heirs, executors and assigns, jointly and severally, firmly by these presents.

"Signed with our hands, and sealed with our seals, this the 14th day of October, 1949.

"The Condition of the Above Obligation is such, that, whereas, the above bound principal on the recommendation and request of Fisk University has been appointed by the Mayor and Board of Administration of the City of Nashville, Tennessee, a Special Policeman for said City of Nashville, for the term and the pleasure of the said Mayor and Board of Administration, for duty at Fisk University Campus.

"Now, if the said principal shall well and faithfully perform all the duties of special Policeman, agreeable to the Laws of the State and Ordinances of the City of Nashville aforesaid, during his continuance in office, and shall indemnify and make good to any person, firm or corporation, any wrongful damage which such Special Policeman may have inflicted on the person or property of the party complaining, then and in that case this obligation to be null and void, otherwise to remain in full force and virtue."

The bond executed for John T. Dowell by the Standard Accident Insurance Company as surety, has the identical phraseology of Walton's bond, except as to the description of the place of duty which is as follows:

"For duty at any colored public school in Nashville, Ace Theater, Bijou Theater and New Era Club."

The bond of Alvin Futrell is likewise the same except the specification as to the place of duty is "City Wide" and the bond is executed by the Metropolitan Casualty Insurance Company of New York.

16

All defendants filed general issue pleas, the case was tried and at the conclusion of all the proof the Trial Court directed a verdict in favor of all the defendants. By proper procedure an appeal was taken by plaintiff to the Court of Appeals, the judgment of the lower Court was reversed and the case remanded to the Trial Court for a new trial.

There is no material dispute about the facts as shown above. The three bonding companies and Alvin Futrell filed their petitions for certiorari to the action of the Court of Appeals, and by proper assignments of error the material questions have been raised.

The defendant Frank Walton was a part-time night watchman or guard in the employ of Fisk University; he was paid a salary by Fisk University alone; in order for him to be entitled to carry a gun and to have some police authority Fisk University arranged for him to be appointed a special policeman for the City of Nashville; in order to get the special police commission he went to the Courthouse and signed a bond in the bound book in custody of the City Clerk; the named petitioner became surety on his bond.

The same procedure was followed with reference to the other two named special policemen with reference to furnishing bond.

Insofar as shown by the proof, there were no ordinances of the City of Nashville authorizing or requiring the appointment of special policemen nor the taking of bonds for such special officers.

Further, Frank Walton had never previously worked at any place as a special policeman other than at Fisk University campus, but on the nights of November 2nd and 3rd, 1951, at the request of John T. Dowell he came to Danceland, a negro dance hall in downtown Nashville

to assist Dowell as a bouncer. On the night of November 3rd, Frank Walton, Dowell and Futrell found it desirable to eject one Ike Hayes from the dance hall on account of his somewhat intoxicated condition and his boisterous conduct. They succeeded in peaceably persuading him to leave the dance hall and go down the steps but after he got down stairs he commenced cursing and using vile language. According to the testimony of Walton he was standing behind the other two policemen when they said, "Let's get him." Walton and Futrell then went down stairs to the street where they stopped and Walton caught Hayes by the arm. Whereupon Hayes hit Walton with his fist or possibly with some other object and knocked him down and then ran down an alley running from Cedar Street to Deaderick Street, which alley is between 4th and 5th Avenues in Nashville. The three policemen chased him to the Cedar Street entrance of the alley and then Walton fired a shot in that direction but at the ground in an effort to halt Hayes. They did not pursue Hayes any farther and did not discover what happened to him, if anything.

On the same night somewhere between 9:30 and 10:30 P.M., the plaintiff, Thelma H. Day, was on the front seat of an automobile with another lady driving in a westerly direction on Deaderick Street and they had stopped at a traffic light at 5th Avenue and Deaderick Street when the plaintiff heard something that sounded like a shot and felt something hit in the back of her head. Miss Day was rendered partially unconscious, taken to the hospital in an ambulance and suffered a severe injury on account of the bullet.

While the exact time that Walton fired the shot does not appear, the special investigator of the Attorney General's office made an investigation and concluded that

the bullet had evidently ricocheted from the ground to the wall of a building along the alley and then had ricocheted off the wall and in the direction in which plaintiff was situated when she was in the automobile at the traffic light. He also concluded that the time of the shooting by Walton was at the time Miss Day was struck by the bullet.

In the view we take of the case it will not be necessary to discuss all of the assignments of error.

■ We are satisfied there is sufficient evidence, both direct and circumstantial, to warrant a jury in finding a causal connection between the injury of plaintiff and the firing of the gun; and that without violation of the rule against basing an inference on an inference.

The next question to be disposed of is whether or not Futrell and Dowell were engaged in a common enterprise with Walton in such manner as to make them liable for the act of Walton firing the pistol.

■ In 52 Am. Jur., 455, Sec. 116, the rule governing such situations is stated as follows:

"The general rule is that two or more persons engaged in a common enterprise are jointly liable for wrongful acts done in connection with the enterprise, at least where the enterprise is an unlawful one, in which case all are answerable for any injury done by any one of them, although the damage done was greater than was foreseen, or the particular act done was not contemplated or intended by them. In this respect, it has been held that where two persons are jointly engaged in an unlawful enterprise, and each performs a wrongful act in pursuit of such purpose, one of which acts causes an injury, the parties may be held jointly and severally liable, although it is not known which of the acts caused the

injury. On the other hand, there is authority for the rule that where two or more are acting lawfully together in the furtherance of a common lawful purpose, one is not liable for the unlawful act of another done in furtherance of the common purpose without his concurrence.''

██ Examination of all of the cases cited in the footnotes to this section discloses that where there is no joint negligence, no encouragement to do the particular act, no *unlawful* common enterprise or objective, then there is no joint liability for an unlawful act committed by one of the several parties.

For example—the case of *Kuhn* v. *Bader,* 89 Ohio App. 203, 101 N. E. (2d) 322, cited in the pocket supplement to said text, two men were engaged jointly in target shooting with a high-powered rifle where the back-stop of the target was inadequate. This clearly was a common enterprise and each of the two individuals was engaged in firing at the target. Clearly, each was liable for the joint negligence although the shot by one of them did the damage. Each was present participating and promoting the negligent act of the other. It was not an unlawful act under the proof in the case, but it was a case of joint negligence.

So in *Benson* v. *Ross,* 143 Mich. 452, 106 N. W. 1120, the defendants were engaged in taking turns with a rifle in firing at a target in violation of the city ordinance and were also guilty of gross negligence.

So in *Thompson* v. *Johnson,* 5 Cir., 180 F. (2d) 431, there was a joint plan to commit an assault and battery on the plaintiffs—an unlawful purpose.

So in *Summers* v. *Tice,* Cal., 199 P. (2d) 1, 5 A. L. R. (2d) 91, where three men were engaged in shooting quail and two of them fired their guns when the third

one was ahead of them in a position known to the other two and the third man was struck by the shot from one of the guns. This was a case of negligence and it was held that it was not necessary to determine whose shot did the damage.

Under Note 3 of the text in Am. Jur., is cited a case which is exactly in point. It is the case of *Wert* v. *Potts,* 1889, 76 Iowa 612, 41 N. W. 374, 375. This case states what we believe to be the correct rule, as follows:

"Where two or more are acting lawfully together, in the furtherance of a common lawful purpose, one is not liable for the unlawful act of another, done in furtherance of the common purpose, without his concurrence. The rule would probably be different, if the common purpose be unlawful. * * * The purpose of defendants in the arrest of the offender was lawful. Now, if one or the other of the defendants, without cause or justification, did discharge a pistol at the accused, without the concurrence of the other, with the purpose of aiding in the arrest, the other defendant would not be liable for such unlawful act. Surely, no one is ready to claim that officers and others, acting in concert in making a lawful arrest, are liable for the unlawful act of one of their number, done without their concurrence. Did the rule of the instruction prevail, all engaged in preserving the peace, and in enforcing the law by arrest, would be subject to liability for the unlawful act of one over whom they had no control, and in whose unlawful purposes they in no manner shared. * * *''

In a similar case which is *Anderson* v. *Maloney,* 1924, 111 Or. 84, 225 P. 318, the same rule is followed, citing and quoting from the case next above, and citing *Richardson* v. *Emerson,* 3 Wis. 319, 62 Am. Dec. 694, the lat-

ter case holding that where the common design is unlawful, the law presumes assent on the part of all, but where it is lawful, such assent is a matter of fact to be proved.

The case of *Kirkwood* v. *Miller,* 37 Tenn. 455, is also cited under Note 3 to the text of Am. Jur., supra. There, all were engaged in the *unlawful* act of trying to tie up a slave, so that each was liable for the act of the one who dealt the fatal blow to the fleeing slave.

Now, it seems clear to us that the common enterprise or purpose of these three men, that is to arrest and then to recapture this man Hayes when he fled, was lawful but that only the act of Walton in firing the pistol at him, was unlawful.

In the opinion of the Court of Appeals, Middle Section, November 13, 1943, in the case of *State ex rel. Harbin* v. *Dunn,* Tenn. App., 282 S. W. (2d) 203, Judge Felts has fully and ably discussed the question of when an officer may or may not shoot in an effort to arrest or to recapture an offender. Suffice it to say that all of our cases are to the effect that, excluding any question of self-defense, an officer is never warranted in law in shooting or in shooting at one who is guilty of only a misdemeanor either for the purpose of the original arrest or for the purpose of recapture after his escape from arrest.

Clearly, this man Hayes was guilty of only a misdemeanor and Walton, therefore, had no right either to shoot him or to shoot at him so as to endanger his life. There is no evidence whatever, however, that the other two officers suggested, encouraged or participated in any manner in this unlawful act. The testimony of Walton to the effect that the other two said, ''Let's get him,'' is no evidence of any participation in the unlawful act because this statement, if made as testified, was made before the

22

two officers got to the bottom of the stairway and before Hayes had struck Walton and then fled.

■ It is, therefore, our opinion that Dowell and Futrell are not liable for this unlawful act of Walton. It necessarily follows, therefore, that the sureties on their bonds are not liable.

■ On the other hand, with reference to Walton, we think the Trial Court was in error in directing a verdict and that the Court of Appeals was correct in holding that the case as to Walton was for the jury.

■ The next question is whether or not the surety on Walton's bond, that is—Hartford Accident & Indemnity Company, is liable for acts committed elsewhere than on the property of Fisk University. Obviously, this is not an official bond because it is neither authorized nor required by statute. It is, however, a good common law bond. *United States Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn. 357, 389, 113 S. W. 397, in which the general rule is stated that a bond, whether required by statute or not, is good at common law if entered into voluntarily for a valid consideration, and if it is not repugnant to law or the policy of the law, the surety is bound according to its terms. According to all authorities such bond is treated as simply a contract. This bond is plain and unambiguous and should, therefore, be interpreted as any other contract so as to arrive at the mutual intention of the parties to be derived from within the four corners of the instrument. If the meaning is doubtful then the circumstances attending the transaction may be considered. The Court should give to the instrument a reasonable and sensible construction, and one which appears to conform the nearest to the justice of the case and the purpose which the parties meant to accomplish. *Ruohs* v. *Traders' Fire Insurance Co.*, 111 Tenn. 405, 420, 78

S. W. 85. The rule of strict construction in favor of sureties is generally confined to volunteer, uncompensated, accommodation sureties, and is not extended to corporate or paid sureties. *Holmes* v. *Elder,* 170 Tenn. 257, 94 S. W. (2d) 390, 104 A. L. R. 1282; *Cambria Coal Co.* v. *National Surety Co.,* 141 Tenn 270, 276, 209 S. W. 641; *Green* v. *United States Fidelity & Guaranty Co.,* 135 Tenn. 117, 122, 185 S. W. 726. In this last case cited just above, however, it is said that the rule cannot be availed of to refine away plain terms.

 Therefore, if we look at the words of the contract itself, it seems clear enough that, while the City of Nashville is the named obligee, the surety undertook to indemnify those parties who were injured or damaged by reason of Walton's activities only *at his place of duty,* which was Fisk University. If on the other hand, there can be said to be any doubt or ambiguity about the meaning of the contract, we may look to the following extrinsic facts. Walton stated that he could sign his name but otherwise could neither read nor write. A special policeman does not have the authority of a regular member of the police force, but is customarily granted a commission for limited duty, usually in protecting the property of private individuals or corporations, from whom he usually receives his only compensation, and to whose orders he is usually subject and is not ordinarily subject to requirements made of regular police as to hours of work; obviously in this case on account of his inability to read and write, he could not possibly qualify as a regular policeman as of the present day. Again, the risk incurred by the surety on the bond of a special officer at Fisk University is obviously much smaller than that to be incurred by an officer acting as a bouncer at a beer-joint and dance hall.

The annotation in 149 A. L. R. 1093, cited by both counsel deals with the question of liability of the surety on the official bond of an officer for acts of misconduct outside his territorial jurisdiction. They involve a discussion of acts by virtue of office and acts under color of office.

None of that is relevant here, however, because this bond is not official and is plainly limited to risks at Fisk University campus.

■ We are, therefore, of opinion that the Trial Court was correct in directing a verdict in favor of the surety on Walton's bond and the Court of Appeals erroneously reversed.

■ There is no evidence that H. H. Thomas, the alleged owner of the dance hall business, employed Walton, or authorized his employment, or knew of it, or was present on this occasion. The evidence is that Dowell employed Walton to assist him and paid him for his services.

Accordingly, the judgment of the Court of Appeals is reversed, that of the Trial Court affirmed, the suit is dismissed as to all defendants except Walton, and the cause is remanded for a new trial as to Walton.

Costs on appeal will be paid by Thelma Day.