Caruthers, J.,
delivered the opinion of the Court.
This case was before us, at last term, upon an appeal in error, by the plaintiff, from a verdict and judgment against him. The action is trespass, for killing a negro man, slave of the plaintiff, by the defendants. The fact was never denied; but the defendants relied, in that trial, upon the ground that, at the time they slew the slave, they had good reason to believe, and did believe, that an insurrection of the negroes was then contemplated, and *457 that the slave in question was engaged in it. In that trial, the defendants were permitted, by the Court, to give in evidence, newspaper publications, the proceedings of public meetings, committees, and the general fears and apprehensions of the people, on that exciting subject, before and at that time.
We reversed that judgment, and gave a new trial, upon the following grounds, as then stated in writing:
1. The publication in the newspapers, on the subject of the apprehended insurrection, as well ■ as all the other proof on that subject, not implicating the slave hilled, was illegal evidence.
2. The proposition, in the charge, “that the same evidence which would excuse the defendants from criminal responsibility, would relieve them from civil liability,” is not true, as a general rule, nor, perhaps, in application to this case. That criminal purpose and intent, express or implied, required to constitute crime, is not, in all cases, essential to an action for injury to person or property.
3. That part of the charge, which holds, “that if defendants honestly believed the slave, Hard, was engaged in an insurrection, they would be authorized to shoot him down, without any attempt to arrest or tie him,” though it may be correct, in reference to a state of facts that might exist — where the danger was imminent and impending — was not so, in application to the facts in this case, and was well calculated to mislead the jury. The slave was already tied, and could do no harm to any one; nor is there any evidence that he was engaged in an insurrection.
4. There is no legal evidence to sustain the verdict, even if the charge of the Court was unexceptionable. *458 Nothing appears connecting this slave, in any way, with any insurrectionary scheme, if any such existed outside of the distempered imagination of the people, much less to authorize the reasonable belief, on the part of the defendants,- that he was then engaged in an actual insurrection; and, besides, they had him well bound with cords, and in a condition -entirely harmless, so if there even had been any danger of him, it did not then exist. Without any necessity, then, real or apparent, they destroyed the plaintiff’s property, and are, therefore, liable for the value.
The case went back, and was tried in conformity to the law, as declared in this opinion. There was a verdict against all of the defendants, for the value of the slave, $800.
It is admitted, that the verdict against Kirkwood is right, but not so as to Denning & Osborn. A very ingenious and labored argument is made in favor of this position, but we are unable to concur in it. The negro was killed by the blow of Kirkwood; but, the proof is ample, that the other defendants were united with him, in the act of tying' the slave, in the first instance, without authority, or sufficient cause; and, after he attempted to escape from this unlawful confinement, it was a joint pursuit. It may be, and doubtless was not intended by any of them that the negro was to be killed, yet, if that resulted from the unlawful acts in which they were engaged, by the stroke of either, all would be equally liable for the damages. This is a' risk that each joint trespasser incurs, by his participation in an unlawful enterprise. If the expression may be used, they are guarantors for each other. They are all answerable for any injury done by either, in the common enterprise. It is no defense against a claim, for *459 tbe damage done in such a case, for any one to say tbat the injury was greater, and the particular act done was not contemplated or intended- by him. They embark in a common canse, and their liability is common, this would be, in a criminal proceeding, needa^ji.bw^Be discussed. Other rules might apply to thatj
We find no justifiable cause, in the pro|F,^5br th£^s¿p-ture and confinement of the slave, in the 0k*^»nstanc.e|'. even under the acts of Assembly to which we He had not misbehaved himself in any way, no wrong, threatened none, and was entirely submissive and docile. After being thus unlawfully tied with a rope, he became alarmed at what he saw and heard around him, and in endeavoring to make his escape from this unlawful confinement, was slain by one of his pursuers, in the joint purpose to recapture him, without any lawful cause or necessity, that can justify the act in a suit for damages.
The wild panic, and vague, undefined apprehensions about a “ rising or insurrection of the slaves,” at that time* cannot be allowed to save parties from liability for the destruction of their neighbor’s property. To justify this, they must stand upon facts, and not rumors and' groundless alarms. This species of property, above all others, must be protected by the -law from wanton abuse. All proper principle, as well as the general interest of slaveholders, unite in establishing the necessity for the most stringent laws on this subject. Humanity, as well as the general interest, demand the enforcement of these laws.
Obedience and strict subordination, are indispensable on the part of slaves; and so far as it has been thought *460 necessary, for these ends, power has been given to magistrates, and, in particular cases, to individuals, other than the owner. But all this is, as it should be, well defined and limited.
The Legislature has been very careful in guarding slaves against the cruelty and violence of those having no interest in or authority over them. They are property: but have souls and feelings, and claims upon humanity. Those who take it upon themselves, in these periods of groundless panic, to slay and destroy, without the sanction of law, must do so at their peril. Every description of mob-law, and reckless invasion of the rights of others, should be visited, with the highest penalties. If this lawless spirit is tolerated, or allowed to display itself with impunity, no man would be safe, in his person or property, in any community. Almost any other evil would be preferable to this. The law is, in general, sufficient for the redress of all wrongs, public and private. But, if it should fall short, in particular instances, the evil had far better be endured than to throw off its restraints, and permit men to take vengeance into their own hands.
There is no legal grounds upon which any of the defendants can escape, and the judgment will be affirmed.