McGrew *v.* City Produce Exchange.

(*Nashville.* March 10th, 1887.)

1. CONTRACTS. *Dealing in "futures." Is wagering, when. Recovery of money lost on.*

That is a wagering contract and void which, though purporting to be an agreement for the purchase or sale of commodities, to be delivered at a future date, is not such in fact, nor intended to be such by the parties; but is a mere pretense, under cover of which the parties gamble and wager on the rise and fall of the prices of such commodities as are pretended to be bought or sold. And money lost on such transactions may be recovered by the loser, under the provisions of ¿ 2440 (M. & V.) Code.

Code cited: ¿¿ 2440, 5688 (M. & V.); ¿¿ 1771, 4870 (T. & S.)

Cases cited and approved: Bell *v.* State, 5 Sneed, 507; Eubank *v.* State, 3 Heis., 488–90.

(See Dunn *v.* Bell, *post,* p. 581.)

(See now Acts of 1883, Ch. 251, making such contracts void if *either* party intends them as wagers.)

2. SAME. *Statute of limitations. Begins to run against loser, when.*

Against the loser's right of action to recover money *lost* on a wager, the statute of limitations of ninety days (Code (M. & V.), ¿ 2440) begins to run from the date at which the money was *lost,* and not from the date at which it may have been *deposited* to await the result.

Code cited: ¿ 2440 (M. & V.); ¿ 1771 (T. & S.)

3. SAME. *Corporations. Liability of stockholders for money received on wagering contracts.*

Where several persons confederate together, and have themselves incorporated, ostensibly for the purpose of engaging in the business of buying and selling futures in corn, cotton, wheat, etc.; but with the real purpose and intention of gambling and wagering on the rise and fall in the prices of such products; the incorporators are individually liable for all sums illegally received by the managers of such corporations on wagering contracts—the incorporation in such case being a mere cloak to cover the illegal transactions contemplated by the parties.

4. SAME. *Same. Same. Liability for money received by agent.*

A party to a wagering contract, who receives money lost thereon by
another, is liable to the loser, although the money was received
through an agent living in another city.

---

FROM FRANKLIN.

---

Appeal from Chancery Court of Franklin County.
E. D. HANCOCK, Ch.

J. D. GOODPASTURE and W. B. BATE for McGrew.

EAST & FOGG, W. S. BEARDEN, and HILL & GRAN-
BERRY, for Defendants.

SNODGRASS, J. This suit was brought on the
4th of April, 1882, to recover various amounts lost
by complainant on certain wagers made with de-
fendants. The several amounts, with dates of their
deposits, are set forth in the bill, together with
dates of the closing of the "deals" whereby the
loss occurred.

All the deposits, except one for $600, were made
within ninety days of the commencement of the
suit, and the "deals" referred to by which all the
loss was occasioned were within ninety days.

The individuals sued were Joseph W. Horton,
Chas. Sulzbacher, W. C. Graves, Thaddeus H. Ma-
son, and Thos. Parkes, incorporators of the City
Produce Exchange. The bill alleged, and the proof

showed, that these defendants combined and confederated together, styling themselves and chartered as the City Produce Exchange, for the purpose of engaging in the business of buying and selling "futures" in corn, cotton, wheat, etc., ostensibly, while in reality this was a pretense, the real business intended to be done, and in fact done, being the pretended purchase or sale, for future delivery, of these products, under contracts in legal and valid form, when in fact illegal and invalid, because of the non-existence of any real intention to buy and sell for such delivery, and so executed and framed to cover and conceal the real purpose of the parties, which was to gamble and wager on the rise and fall of prices of the articles pretended to be bought or sold.

There were several defenses interposed: First, that the corporation was alone liable; that, being chartered for an apparently legal purpose, the incorporators could not be held individually liable for illegal acts of its managers or officers.

There is nothing in this defense. The facts justify the finding that the incorporation was but a cloak used to cover the illegal acts contemplated in the organization and done as a business, and in such case the form of the transaction is disregarded, and the intent and substance ascertained, and liability fixed for the thing done, without respect to the pretense under which it was attempted to be concealed. Nor, in this connection, it may be properly stated, is it material that defendants

did not themselves originally, in person, receive of complainant the sums lost by him, but did it through an agent at Shelbyville, who received and forwarded the money to their office at Nashville. When it appears that several have unlawfully combined and confederated to gamble with and defraud another through a selected party, each confederate participating is liable for the entire amount received, as the money is received for all and by all according to the devised illegal method under which they were all jointly operating.

The second defense interposed was (as to one of the transactions, a deposit of $600 in December, 1881) the statute of limitations of ninety days. New Code, § 2440. The language of that section is as follows:

"Moreover, any person who has paid any money or delivered anything of value *lost* upon any game or *wager* may recover such money, thing, or its value by action commenced within ninety days from the time of such payment or delivery."

If the money was *lost* when deposited, the item referred to could not be recovered, for more than ninety days had elapsed from the date of deposit until the commencement of the action; but this amount was not lost until the close of the "deal" as to it on the 8th of February, 1882; and we hold that the statute did not operate until date of the loss, as before that time it was merely deposited to abide the result of the wager, and not appropriated by or paid to defendants in consequence

of its result. The payment for this purpose must date from such appropriation of the money of complainant as his loss at that time in the transaction.

It is also insisted that there can be no recovery in this case because there was no "wager upon a game," and that this is essential to constitute the "wager" referred to in the statute.

The terms of the statute answer this position. It is not a "wager upon a game" for which recovery is authorized. The plain language is that money lost upon any "game" or "wager" may be recovered. Mr. Bouvier defines a wager to be "a contract by which two parties or more agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening or not happening of an uncertain event." If for the word used in the statute this definition was substituted, there could be no doubt of the right of recovery. It would be a strange construction by which the statute should be deprived of its effect by refusing assent to the definition of its terms. Contracts of this character are clearly provided for in letter and spirit by the words used, and are obviously within the mischief intended to be suppressed.

This is a sufficient answer without pursuing the argument made in this connection by defendants' counsel that a wager is not an indictable offense within the meaning of the gaming law under which formerly betting on horse-races and elections was not, and, therefore, money lost on a wager is

McGrew v. City Produce Exchange.

not recoverable under the statute. But if it were necessary we would have no hesitation in holding that such wagering contracts as those disclosed in this case were gaming in the sense of the statute. It is now settled in this State that gaming is not confined to "playing at any game of hazard or address for money," etc., in the ordinary sense of these words as used in Code, § 5688, but that it is "any agreement between two or more persons to risk money or property on a contest or *chance* of any kind where one must be gainer and the other loser." *Bell* v. *State*, 5 Sneed, 507; *Eubanks* v. *State*, 3 Heis., 488–90.

The first of these cases is an indictment sustained for gaming against Bell for receiving money in "a scheme denominated a gift enterprise," and the last is another held good against Eubanks for taking money as consideration for sale of a prize candy package.

It matters not what the unlawful device is upon which the money is received as a hazard, it is gaming. The argument of counsel that the wagering established in this record was not gaming before the Act of 1883 (Ch. CCLI.), and that this act was a legislative declaration to that effect, is not sound for two reasons: First, because that act did not declare that the dealing in futures, when *neither* party intended a real purchase or sale, was gaming, for it always had been so. It declared that thereafter such dealing should be gaming if *either* of the contracting parties, dealing simply for

37

the margin or on the prospective rise or fall of prices, had no intention or purpose of making actual delivery or receiving the property or thing in specie. Acts of 1883, page 331.

Before the passage of this law such a transaction as dealing in futures, of itself, was not unlawful, nor was it unlawful unless it was the intent of both parties that there should be no real purchase or delivery. This act was intended to make it unlawful if *either* had no intention of effectuating a real purchase or sale. It was designed to suppress the evil of dealing in futures, and limit such operation to *bona fide* sales and purchases by those who wished to sell to those who wished to buy. In making the seller responsible for the intent of the buyer, and the buyer responsible for the intent of the seller, it intended to suppress gambling by confining the business of buying and selling for future delivery in such limits as would practically preclude the possibility of it.

The *bona fide* dealer can still operate, but he cannot do so upon any terms which do not protect the community against the pernicious and ruinous speculation in the rise and fall of prices. He is obliged, for his own safety—as this act provides extreme penalties—to avoid the speculator, and buy only for the legitimate demands of necessity and trade.

The unreported case of *Wallace* v. *The State* is cited as an authority to show that this Court, in discharging the defendant under commitment for

contempt for refusing to answer before the grand jury in relation to certain dealings in futures at Shelbyville, thereby declared that these contracts under consideration were not gaming. The statement of the proposition by counsel in his brief is as follows:

"The Judge charged the grand jury that dealing in futures was gaming within our statutes, and thereupon summoned Wallace before them. He refused to disclose the names of the dealers. The Court imprisoned him for contempt. He applied for a writ of *habeas corpus,* and the case finally reached the Supreme Court," and the prisoner was discharged.

Upon this statement the judgment of this Court was manifestly correct, no matter what unreported reasons were assigned for it. In holding that "dealing in futures" was not gaming *per se,* as charged by the Circuit Judge, the Court then held no more than we have here held.

The defendant, it seems, was being examined generally upon the assumption of a right to have such examination made, with no charge of any unlawful dealing (which would have been gambling) pending before the grand jury upon which they were expected to find an indictment or presentment.

His commitment for contempt was, therefore, unauthorized, and his discharge clearly proper. This is the extent to which the judgment in that case

can be looked to, and to no other purpose. It is authority for this, and no more.

The final defense in this case was one of settlement. The defendants insisted that they had made a settlement with their agent, Shoffner, at his and complainant's instance, and that complainant agreed that if such settlement was made, as it was afterward done, that such settlement should operate to discharge defendants of liability to complainant. Several of the defendants so testify; but complainant and Shoffner deny it and give some reasons in support of their version of it, which are of much weight. We are entirely content to hold that, as against their evidence, the defendants have not made out the defense of settlement.

The Chancellor decreed against defendants. Three of them—Sulzbacher, Graves, and Mason—appealed. The judgment must be affirmed, with cost.