FILED

01/16/2025

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 10, 2024 Session

## IN RE CONSERVATORSHIP OF SYLVIA CARLYLE BRAINARD

**Appeal from the Probate Court for Shelby County**
**No. PR-11538          Kathleen N. Gomes, Judge**

_____

**No. W2024-00031-COA-R3-CV**
_____

After two sets of relatives filed competing petitions for the appointment of a conservator over the respondent, the parties entered into an agreed order and settlement agreement that provided that the respondent was not in need of conservator, but that the parties had certain obligations that were subject to review by the court and guardian ad litem going forward. Months later, appellants filed a petition to set aside the agreed order on the basis that appellees had not complied with its terms; appellees responded with a motion to dismiss appellants' petition on the basis that they had not alleged proper grounds to set aside the parties' agreement. After a hearing on the motion to dismiss, the trial court entered an order stating that "[a]ll outstanding orders should be set aside and all petitions and the case dismissed" without explanation. Because we cannot review the trial court's sua sponte dismissal without an adequate explanation, we vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Aubrey L. Brown, Jr., and Semmes H. Bobo, Memphis, Tennessee, for the appellants, James Brainard and Carol Brainard.

Tiffany Taylor Bowders and Julie Chapman, Memphis, Tennessee, for the appellees, Gail Sredonja and Marc Sredonja.

# MEMORANDUM OPINION[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 2018, Petitioners/Appellants James Brainard and Carol Brainard ("Appellants") filed a petition for the appointment of a conservator over their adult daughter Sylvia Carlyle Brainard ("Respondent") in the Shelby County Probate Court ("the trial court"). The petition alleged that Respondent was disabled and in need of a conservator. The petition further alleged that Respondent refused to be voluntarily examined and that she should be ordered to submit to a mental examination with the report submitted to the court as required by Tennessee Code Annotated section 34-3-105(a). Appellants also asked that they be appointed co-conservators over Respondent.

The next day, Counter-Petitioners/Appellees Marc Sredonja and Gail Sredonja ("Appellees") filed a notice of appearance in this matter. Appellees are Respondent's maternal aunt and uncle. The trial court thereafter appointed a guardian ad litem ("GAL") to investigate the situation and determine whether an attorney ad litem ("AAL") should be appointed for Respondent.

On June 26, 2018, Appellants filed a motion to require Respondent to undergo a psychological evaluation. In particular, Appellants asked that the evaluator determine whether Respondent needed a conservator, "whether Respondent has been coached or unduly influenced in these proceedings," and who should be appointed as conservator.

On June 29, 2018, Appellees filed a counter-petition for the appointment of a conservator over Respondent. Therein, Appellees agreed that Respondent was "totally incapacitated" and "incapable of making decisions regarding her own care." The counter-petition further asserted that Respondent was examined by her treating physicians in May 2018, who had both opined that she is in need of a conservator. Appellees differed from Appellants only as to who should be appointed as conservator over Respondent.

According to Appellees, Respondent had been the victim of abuse by Appellants for many years, culminating in an episode where police and an ambulance were called in April 2018, after Respondent was found wandering alone on the road. Respondent also called

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Mr. Sredonja and informed him that her injuries were caused by Mr. Brainard. Since that incident, Respondent has resided with Appellees. As a result, a court in Mississippi, where Appellees reside, entered an order of protection prohibiting Appellants from contacting or coming near Respondent. As such, Appellees asserted that they were proper parties to be named as conservators over Respondent. Attached to the counter-petition were a sworn physician's certificate stating that Respondent was incapable of caring for herself or her estate and that the appointment of a conservator was in her best interest, an affidavit from a different physician stating the same, a police report, photographs of alleged injuries to Respondent, and a statement written by Respondent stating, *inter alia*, that she wanted to live with Mrs. Sredonja.

On August 15, 2018, the trial court entered an order providing that Respondent would submit to a psychological evaluation with Dr. Megan L. Avery, Ph.D., and Dr. Beil E. Aronov, Ph.D. The order provided that the purpose of the evaluation was

> to provide the evaluator's opinion regarding the Respondent's physical and mental functioning as it relates to the need for the appointment of a Conservator, the evaluator's opinion regarding whether Respondent has been subjected to physical or mental abuse, the evaluator's opinion regarding whether Respondent has been coached or unduly influenced in these proceedings, and, if a Conservator is appointed, the evaluator's opinion and recommendation as to who that should be.

Although Dr. Avery began to conduct the evaluation in August 2018, a problem soon arose when Dr. Avery informed the parties that she could not offer an opinion as to whether Respondent had suffered physical or mental abuse or whether Respondent had been coached or unduly influenced.[2] Appellants therefore requested that Dr. Avery cease her evaluation. The evaluation nevertheless took place, and a report was submitted to the parties on September 7, 2018. On September 11, 2018, Appellants filed a renewed motion for a mental evaluation that complied with the trial court's order and submitted the names of experts that they confirmed would be capable of following the trial court's directives.

Appellees filed a response in opposition to a second mental evaluation on September 28, 2018, arguing that Appellants knew and agreed to the scope of Dr. Avery's evaluation

---

[2] According to an August 30, 2018 email from Dr. Avery to counsel, Dr. Avery explained that "A psychologist cannot determine if someone has been subject to abuse; that is more of an investigator/detective role." Dr. Avery further explained that she could only determine if an individual was subject to manipulation, not whether they had actually been coached. Finally, she explained that

> I will not make recommendations about who would be the appropriate conservator (this was never requested of me prior to the court order, and it is not within the scope of what I was retained to do). This is a much more involved and time-intensive evaluation that includes evaluations of all parties involved (like a child custody evaluation).

before it took place, that the mental health evaluation was not the proper vehicle for determining whether abuse took place, and that a second evaluation would be harmful to Respondent. Appellees attached to their motion Dr. Avery's report, in which she concluded that Respondent (1) "is suffering from a mental condition/ disability, namely Intellectual Disability, Mild"; (2) "is not able to manage her personal and financial affairs"; and (3) should be appointed a conservator to assist with personal and financial affairs.

On October 23, 2018, the GAL filed her report. Therein, the GAL opposed Appellants' request for a second mental evaluation of Respondent. Moreover, the GAL opined that "Respondent is in need of assistance, but has the ability to determine when she needs assistance and from whom she wants assistance in making decisions or assisting with her daily care." As such, the GAL stated that it was her recommendation "that a conservator of the person is not needed for Respondent." Instead, the GAL stated that Respondent had a sound rationale as to why she wanted Mrs. Sredonja to assist her with certain affairs.

On October 25, 2018, the trial court entered an order denying Appellants' request for a second mental evaluation. On November 14, 2018, the GAL filed a motion for the appointment of an AAL for Respondent; the motion was granted by order of November 26, 2018. On January 31, 2019, the trial court ordered the parties to participate in mediation.

On March 6, 2019, the trial court entered an agreed order indicating that the parties entered into a mediated settlement agreement of this matter. In the mediated settlement agreement, which was incorporated into the order, the parties stated as follows:

> A formal adjudication that no conservator over the person or property of [Respondent] is warranted, as [Respondent] is a competent adult capable of making decisions over her finances and person and shall retain all rights of an adult, including but not limited to signing power of attorney or other such legal documents and deciding where she will live.

The settlement further established that for a period of two years following the entry of the agreed order, Respondent would be provided with a cell phone which she could use to freely communicate with Appellants or anyone else and that Appellants could initiate contact with Respondent in certain circumscribed respects. Respondent was permitted to respond or not respond as she saw fit. Moreover, Appellees were not to interfere with Respondent's mail and Respondent and Appellants were to participate in counseling, first separately and then together, in Respondent's sole discretion.[3] The settlement agreement also provided that

> The [GAL] shall remain on the case to ensure the implementation of the

---

[3] The agreement specifically stated that Respondent "shall retain the right to decide whether or not she will participate in such joint counseling sessions."

provisions of this Agreement with regard to counseling. Should the [GAL] determine that any party to this Agreement has taken steps to fail to comply with the counseling provision, she shall immediately report said finding to counsel for the parties and the Court.

The parties finally agreed that their agreement "resolves all issues pending in the above-referenced cause of action[.]" The agreed order therefore discharged the AAL and directed that both the GAL and AAL "shall be awarded a reasonable fee for their services."

The AAL thereafter promptly filed a motion to recover her attorney's fees, and the trial court ordered the parties to appear for a September 2019 status hearing. In a September 17, 2019 order, the trial court stated that the GAL reported that "things were going well" and there had been no reports of problems. Appellees agreed that things were going well, but Appellants did not; rather they reported that Respondent was regressing and was being manipulated by Appellees. As such, Appellants asserted that "a petition or appropriate pleading to put these issues before the Court may be forthcoming." The trial court ruled that should such a petition be filed, the court wanted to hear from the counselor for Respondent, as well as Respondent herself. On November 20, 2019, the trial court entered an order awarding the AAL attorney's fees based on her amended petition.

On December 20, 2019, however, Appellants did file their petition to set aside and vacate the agreed order and to order Respondent to participate in another mental evaluation. Therein, Appellants admitted that they entered into the settlement agreement, but asserted that

The Agreement was a means to an end, and its main intent and purpose was to attempt to repair and, to the extent possible, restore a relationship between [Appellants] and their daughter. At the time of the entry of the Agreed Order, as a result of the machinations of [Appellees] and their alienation of Respondent from her parents, [Appellants] had not seen or spoken to their daughter in almost a year.

Appellants further alleged that Appellees "have either intentionally failed or refused to comply with the Agreement, or they have purposefully taken steps to frustrate the intent and purpose of the Agreement." In particular, Appellants alleged that Mrs. Sredonja refused to allow Respondent to meet with the counselor alone, that Appellees were not complying with the counseling schedule, and that Appellees have contacted the counselor in a harassing manner. Moreover, Appellants alleged that Appellees failed to provide Respondent with access to a cell phone as agreed. Appellants therefore asserted that Appellees breached the duty of good faith and that "they have thereby rendered the Agreement essentially a nullity." As a result, Appellants asked that the settlement agreement be set aside and that Respondent be ordered to submit to a new mental evaluation. Appellants further requested that Appellees also be ordered to submit to an

evaluation. Appellants' petition was sworn by Mrs. Brainard to be "true and correct to the best of her knowledge, information and belief[.]"

Appellees responded by filing a motion to dismiss Appellants' petition to set aside the agreed order on January 23, 2020. Therein, Appellees essentially argued that Appellants had not set forth sufficient grounds to set aside the parties' mediated agreement. Rather, Appellees contended that Appellants' petition merely asserts that they wish to rescind the agreement because Appellants did not "receive[] the results they desired." So Appellees argued that the petition should be dismissed for failure to state a claim for which relief should be granted.

On February 3, 2020, the trial court entered an order setting a hearing on Appellants' petition to set aside the agreed order for April 2, 2020, and re-appointing the AAL.[4] Appellants responded to Appellees' motion to dismiss on February 18, 2020, arguing that the trial court had authority to set aside the settlement agreement because it did not constitute a final order and revision is permitted under Rule 54.02 of the Tennessee Rules of Civil Procedure.[5] Appellants further asserted that Appellees'

> promises set forth in the Agreed Order were illusory, and that [Appellees] have intentionally failed and refused to comply with the Agreed Order, or have purposefully taken steps to frustrate the intent and purpose of the Agreed Order, which this Honorable Court must take as true for purposes of the Motion to Dismiss[.]

So Appellants asked that Appellees' motion to dismiss be denied.

On February 21, 2020, Respondent, by and through her AAL, joined in Appellees' motion to dismiss the petition to set aside the agreed order. Appellees filed a reply to Appellants' response on February 26, 2020, asserting that the agreed order was final because in conservatorship proceedings, finality occurs when the trial court resolves the issue pending before the court, regardless of whether ancillary matters remain unresolved. Appellees further asserted that Appellants were not entitled to relief under either Rules 54.02, 59.04, or 60.02.

Also on February 26, 2020, the GAL filed a supplemental report, indicating that Respondent has made significant progress since the GAL's last interaction with her. The GAL further reported that it remained her opinion that Respondent was not in need of a

---

[4] Around this point in the trial court proceedings, the matter was transferred from Division II, with Judge Karen Webster presiding, to Division I, with Judge Kathleen Gomes presiding. There is no order of transfer included in the record and no explanation. However, neither party takes issue with the transfer of this matter on appeal.

[5] Appellants also noted that even if the agreed order was a final order, the trial court had the authority to provide Appellants' relief under Rule 60.02 of the Tennessee Rules of Civil Procedure.

conservator.

A hearing on Appellees' motion to dismiss the petition to set aside the agreed order occurred on February 27, 2020. On April 6, 2020, the GAL filed a petition for an award of attorney's fees to both the GAL and the AAL. Appellants responded in opposition on April 20, 2020. The AAL thereafter filed a reply to Appellants' response.

On April 22, 2020, the trial court entered an order dismissing the case as a whole. Specifically, after reciting the parties' pleadings related to Appellants' efforts to set aside the agreed order, the trial court's order stated in full:

> 1. All outstanding orders should be set aside and all petitions and the case dismissed.
> 2. No fee shall be awarded to [Appellants] or [Appellees].
> 3. The fees for the [GAL] and [AAL] are hereby reserved for future hearing.

On May 22, 2020, Appellants filed a motion to alter or amend the trial court's order. On December 13, 2021, the trial court entered an order confirming that the GAL had withdrawn her petition for attorney's fees.[6] The motion to alter or amend was eventually denied by order of December 7, 2023. This appeal followed.

## II. ISSUES PRESENTED

On appeal, Appellants raise three issues. The first two issues relate to the trial court's ostensible grant of Appellees' motion to dismiss their petition to set aside the agreed order. Appellants' final issue asks whether the trial court erred in dismissing "the entire legal proceeding, which was outside of the scope of relief requested by the motion to dismiss." Because we agree that the trial court's dismissal was improper, we confine our review to that issue.

## III. ANALYSIS

This case began with competing conservatorship petitions. At its outset, both Appellants and Appellees agreed that Respondent suffered from a disability and that a conservatorship should be granted over her person and finances.[7] What they disagreed

---

[6] The order does not indicate that the withdrawal effected the fees of the AAL, as the order specifically stated that the fees of the AAL would be addressed at the hearing on the motion to alter or amend. The order denying the motion to alter or amend, however, did not address the AAL's fees. Because the rules of finality are difficult to apply in matters involving probate court, and we are vacating this case for further proceedings, we will nevertheless address this appeal notwithstanding our concern that the record before us does not reflect a fully final judgment. *Cf.* Tenn. R. App. P. 2 (allowing this Court to suspend the rules of appellate procedure for good cause).

[7] The GAL that was eventually appointed did not agree with this assessment, and did not

about was who should be appointed as the conservator over Respondent. This dispute culminated in a fully executed settlement agreement that was incorporated into an agreed order on March 16, 2019. According to Appellees, this order constituted a final adjudication of the case as it fully answered the question of whether Respondent was in need of a conservatorship in the negative. According to Appellants, however, this order was not a final adjudication of all the issues before the trial court because the settlement agreement contemplated that compliance with the agreement would be subject to periodic review by the GAL and the trial court for the next two years. In any event, a dispute regarding compliance soon arose, and rather than attempt to force Appellees to comply through the trial court's contempt power, Appellants sought to rescind the settlement agreement as a whole.

Appellees responded to the petition to set aside the agreed order with a motion to dismiss Appellants' petition for failure to state a claim upon which relief could be granted. Prior to the hearing on the substantive merits of Appellants' petition, the parties appeared before the trial court solely to address the motion to dismiss the petition to set aside. At that time, no motion to dismiss the conservatorship action in its entirety had been filed by either party. Following this hearing, however, the trial court entered an order that not only set aside all the orders entered in the case, presumably including the agreed order, the trial court also dismissed all the petitions, resulting in dismissal of the conservatorship action as a whole. The trial court offered absolutely no explanation for its decision in the written order. Respectfully, the trial court's decision to dismiss this action without explanation was in error.

As we recently explained,

> A trial court has the authority to dismiss a complaint "when he is of the opinion that the complaint fails to state a claim upon which relief may be granted." **Huckeby v. Spangler**, 521 S.W.2d 568, 571 (Tenn. 1975). But surprise dismissals are "not to be encouraged." **Id.** Before dismissing a lawsuit, the court should give the parties notice that it is considering such a drastic step. **Regions Bank v. Prager**, 625 S.W.3d 842, 849 n.6 (Tenn. 2021); *see also* **Justice v. Nelson**, No. E2018-02020-COA-R3-CV, 2019 WL 6716300, at *5 (Tenn. Ct. App. Dec. 10, 2019) (emphasizing the importance of fair procedures when considering dismissal of a lawsuit). A court's dismissal power "must be exercised most sparingly and with great care that the right of the respective parties to a hearing shall not be denied or impaired." **Harris v. Baptist Mem'l Hosp.**, 574 S.W.2d 730, 731 (Tenn. 1978).

**Magnolia Pointe Homeowners' Ass'n v. Mitchell**, No. E2022-01581-COA-R3-CV, 2024

---

recommend a conservatorship.

WL 2927049, at *3 (Tenn. Ct. App. June 10, 2024).

Therefore, "'[t]he trial court's burden . . . is much higher when dismissing a complaint sua sponte.' 'At a minimum, the court must state the reasons for the dismissal in its order.'" ***Sullivan v. Allen***, No. W2023-01357-COA-R3-CV, 2024 WL 4182170, at *2 (Tenn. Ct. App. Sept. 13, 2024) (internal citation omitted) (first quoting ***Carnett v. PNC Bank, NA***, No. W2015-01677-COA-R3-CV, 2016 WL 402495, at *6 (Tenn. Ct. App. Feb. 2, 2016); and then quoting ***Justice***, 2019 WL 6716300, at *5). In other words, "while sua sponte dismissals are authorized by Tennessee law, trial courts must have ample justification in taking such a rare and drastic step." ***Carnett***, 2016 WL 402495, at *6. Clearly, the trial court's order providing no explanation whatsoever for the sua sponte decision to dismiss both the orders in the case and the petitions filed by the parties does not meet these exacting requirements. When a trial court's grant of dismissal sua sponte was so "devoid of reasoning that we [were] unable to discern whether the power of dismissal was exercised appropriately[,]" we have concluded that it is necessary to vacate the order of the trial court and remand for further proceedings. ***Sullivan***, 2024 WL 4182170, at *3.

Still, in an effort to resolve this matter expeditiously, we have reviewed the transcript in this case to comprehend the trial court's reasoning. *But see **Williams v. City of Burns***, 465 S.W.3d 96, 119 (Tenn. 2015) (noting that the trial court speaks through its written orders and not through the transcript of the proceedings). But that transcript provides no better understanding of the trial court's actions. For example, while the parties' arguments concern whether the agreed order constitutes a final judgment subject to revision only under Rule 60.02 of the Tennessee Rules of Civil Procedure, rather than an interlocutory order that could be revised under either Rule 54.02 or Rule 59.04, the trial court's oral statement gives no indication of how it was treating Appellants' motion to set aside. Nor does the trial court specifically rule on whether Appellants would be entitled to relief under any of those rules, other than to suggest that the proper remedy for Appellants' allegations would be a contempt petition.

Instead, the trial court's decision to set aside all orders entered in this case *and* dismiss all petitions filed by the parties appears to rely on the following reasoning concerning the effect of setting aside the agreed order:

> I don't know why we even have an order in this case and I do not know why there was an agreed-to order.
> I do not know why we did that because the order and all the proof showed that this young lady does not meet the qualifications of needing a conservator. So let me put it to you this way; if I set aside this order, then there's no conservatorship at all . . . .
> . . . .
> . . . [I]f I agree today to set aside this order, then I'm setting it aside and dismissing the whole thing because there's no proof for me to even keep

it here.

. . . .

. . . I'm going to set it aside and dismiss the whole thing. So if you'll prepare an order, which will mean that if [Appellants] want to pursue this any further, they will need to file another conservatorship.

When counsel for Appellants objected that setting aside the agreed order should not result in a dismissal of the conservatorship action, the trial court responded that based on the fact that Respondent "does not need a conservatorship . . . it just seems to me that this is a good opportunity for me to look at it again and just determine that the whole thing is dismissed." Respectfully, the trial court is mischaracterizing the procedural posture of the case.[8]

Here, prior to the agreed order, Respondent had participated in a mental evaluation with Dr. Avery, who had opined that Respondent was a person in need of a conservator. Indeed, both parties to this appeal filed competing petitions for a conservator to be appointed for Respondent's benefit. Ultimately, however, the agreed order resolved the issue of whether Respondent needed a conservator in the negative, as the parties agreed that Respondent was not in need of a conservator. The relief that Appellants sought— rescission of the agreed order and settlement agreement—would return the parties to the status quo prior to the agreed order.[9] In other words, setting aside the agreed order would not have the effect of resolving the conservatorship question, but would result in the opposite—that the conservatorship question would be re-opened as unadjudicated pending a final hearing.

Thus, the trial court's ruling, as best we can glean from the written order and transcript provided, appears to rest on a fundamental misunderstanding of the procedural posture of this action. Without a proper explanation of the trial court's reasoning in setting aside all orders and dismissing the competing petitions in this case, we cannot conduct meaningful appellate review of the trial court's actions. As a result, the trial court's decision to effectively dismiss this case *in toto* by setting aside all orders entered and also dismissing all petitions filed by the parties is vacated, and this matter is remanded to the trial court for further proceedings consistent with this Opinion.[10]

## IV. CONCLUSION

The judgment of the Shelby County Probate Court is vacated, and this matter is

---

[8] Some of the trial court's confusion is likely due to the inexplicable transfer of this case to its current division.

[9] We express no opinion as to whether Appellants are entitled to relief from the agreed order under either Rule 54.02, Rule 59.04, or Rule 60.02.

[10] Appellees also requested an award of attorney's fees incurred on appeal. Given our resolution of this appeal, we respectfully decline to award attorney's fees to Appellees in this matter. All other issues are pretermitted.

remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellants, James Brainard and Carol Brainard, and one-half to Appellees, Marc Sredonja and Gail Sredonja, for all of which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE
